Good afternoon, your honors. Michael Portner on behalf of the appellant and cross appellee, Josefa Arroyo. Your honors, I'll try not to repeat what's in the briefs, but what it appears happened here is that the trial court was presented with inconsistencies in the evidence or conflicts in the evidence, particularly within the deposition of Josefa Arroyo. If I understood this right, what you got fired for was refusal to take the drug test. That was the stated reason. And everything else is kind of by the side, because she didn't get fired for refusing to lift suitcases or put things in the overhead racks. She claimed that they failed to make accommodations, but she wasn't constructively discharged because she didn't quit. It was just a complaint she had. Well, your honor, under the FEHA, Government Code Section 12940, failure to accommodate by itself is a violation of the statute, even if she had remained on the job. And that is one of her claims, is failure to accommodate. And yes, I agree that the stated reason was failure to take the drug test. Our point on the appeal and the genuine issue about whether she failed to take it. The answer is no, she did not take it. The question is why and what happened, and whether or not that was the actual reason she was terminated, what she treated as other employees would have been. And what our point was at trial level and here is that there may be inconsistencies in her testimony and her deposition, but on a summary judgment motion, she's entitled to have those conflicts resolved in her favor, and that does not appear to have been done by the trial court. And on the reasonable accommodation, it is clear from her testimony repeatedly that she was not given any type of accommodation on many occasions. I thought what happened was other employees helped her out. She testified at one point that sometimes they did. There was a time she called a supervisor and complained, and he said, how dare you call me when you haven't even asked the people that are there to give you a hand. On one occasion that did occur. On other occasions, according to her testimony in her deposition, there were times where she was left by herself without assistance. She was told by her supervisor that she couldn't work if she can't lift 100 pounds. There were times in her deposition testimony that she said that she was frequently unable to accommodate, and there weren't people around to help her. That's all in her deposition. And, yes, I agree, there's inconsistent testimony as to was she always given assistance or not. But given that it's in her deposition, both that she was not given accommodation and assistance, and that on occasions that she was, she's entitled to have those inconsistencies on summary judgment resolved in her favor. That's existing in trial, but troubleshoot facts. I don't know. We've got lots of cases saying that you can't create an issue of fact by inconsistencies in your own testimony. I mean, that is, but that's not what happened here. This is all in the same. You can argue it a different way. You can say, well, she said on some occasions she was helped, and on some occasions she wasn't. And on occasions she wasn't is enough to go forward on. But it's all in the same deposition. But you don't create an issue. If there's no dispute of fact, there's no need for a trial. I agree, Your Honor. But if in the same deposition she's asked the same question three times, in this case I think she was asked the same question, similar questions, four or five different times, and on one occasion she says I was given assistance, and on the other occasion she says, no, there were occasions where I was not given assistance, I was there by myself, there was no one to help me. If that's all in the same deposition, then on summary judgment, she is equally entitled to have the Court say the inconsistency has to be resolved by a jury. It's not that that situation of her declaration is contradicting her deposition. This is all in the same deposition. And if we had come forward with the original testimony, you know, that I wasn't given assistance, the question is, which one do you look at first, and how do you resolve it? What do you do about page 77? Okay, now, did you ever have any occasion at any time when anybody refused to help you do lifting, when you requested help lifting? No. That's correct. The question is, is that by itself a reasonable accommodation? Because in that same deposition, she testified there were occasions where there was nobody there, and she was not given any assistance. Under the law, she's supposed to be accommodated for her disability. She doesn't have the obligation every single time to say, I need help. The employer's obligation under 12940 is to accommodate a known disability. It's the employer's obligation. And she's sitting there working by herself. Wait a minute. If you have a bad back, there are some disabilities like you only have one leg where anybody can see it. But with a bad back, you would have no idea looking at me, and I have no idea looking at you, whether either of us has a bad back or a lifting limitation. You have to bring it to somebody's attention. Hey, I need a hand here. Well, at the trial level, the Continental did not even dispute that she had a disability and that they knew about the disability, and that's pointed out in our opening brief. That has never been an issue. There's even testimony from one of the witnesses that they had paramedics come out on occasions to help her when she was on the job and had problems with her back. That has not been an issue, whether she actually has a disability or that Continental. She testified that she – Tell me if I have this right. The way I'm understanding this, this is not one of the people that's behind the counter when you check in and they take your bag and put it on a conveyor belt. This is a person who's on the airplane. Is that right? Oh, no, Your Honor, no. She's in the terminal, and she is basically something more than a ticket agent because she helps people with special problems. But part of her duty is to get people on the plane. Part of her duty is to handle luggage. Part of her duty is to do all the things a ticket agent does and more. She's not on the plane. She's – She doesn't travel on the plane. She's the person that the person behind the counter calls over when there's a problem with a reservation. That's correct. Is she doing some ticketing? Pardon me, Your Honor? Does she do some ticketing or not? I believe so. I mean, I don't recall offhand in the record whether it is, but I think so. And I think she does it when there's special occasions is my recollection of the record. Well, you know, you're appealing what they're appealing, and I've read what Judge Manel found about you, and I want to read it to you and see why she didn't – ask why she didn't impose sanctions. She says, Plaintiff's counsel has failed to comply with prior orders, pursued claims that lacked evidentiary support, filed papers that assisted neither his client nor the court, and ultimately lost in all claims. Now, why should you not have been subjected to sanctions? Because, Your Honor, as I explained to the court, and as the court found, nothing I did was in bad faith. The court and I had – But she's found all that. Right. She doesn't explain why that isn't – did you do that in good faith? You were bringing claims without evidentiary support? I do not believe so, Your Honor. And I think the record – She finds you had no evidentiary support. How could that have been in good faith? Your Honor, she found that it wasn't – my point is, is I disagree with that conclusion. But I mean, once she reaches that conclusion, how can she credit you with good faith? Only because the lack of evidence she's talking about is whether it was before this May 31, 2000 deadline. That's the type of evidence that she was talking about, whether it came within what the defense claimed was the statute. And we disagreed with that throughout these 12B6 motions. The court and I did, and we still do. But I think looking at the record, this court can conclude that a reasonable attorney would look at this evidence and conclude that the client had a case. It can't be a case – this is certainly not a case where anything was filed frivolously. This is not a case where there's not even a scintilla of evidence. The evidence is clear. She was disabled. How about your failure to comply with her orders? My – as I argued with her many times, I don't think I failed. We had a basic disagreement, which was that my opinion and my legal research showed the same acts can constitute harassment. The same acts – those exact acts can also constitute discrimination. Those same acts can also constitute retaliation. And our basic disagreement was that she did not think the same acts could constitute all three of those, that you could not put the same facts in one cause of action and have them in another cause of action. They had to be completely separate and distinct. And we disagreed on that throughout those 12B6 motions. Even when the case was finally ruled on summary judgment, we disagreed on that. And that was the reason that the sexual harassment claim was finally dismissed, was that she ruled it was including retaliation claims. It was including discrimination claims. And my response to that was, these are the same facts supporting each of those claims. They're the same acts. They're just different results resulting from those same acts. That was our basic disagreement. Was, is – was then and is now. And, I mean, my point was is that – and is that there are conflicts in the deposition testimony itself. And on a summary judgment motion, you can't say, well, we're going to accept her statement here and disregard her statement over there. They both have to be accepted. And the conflict in whatever she says is up to a jury to determine.  It's up to the jury. It's not unusual in depositions for clients to say yes to one question and turn around and say, well, no, that wasn't quite right. That – that permits a plaintiff always to get by summary judgment. Only if it's in the – If there's conflict in your own deposition. Only if it's in the deposition itself, I agree. If it's in the deposition, the trial court can't say, I'm accepting this testimony and not accepting that testimony. Well, that's a foolproof way of avoiding summary judgment for plaintiffs then. I can't answer that. All I can tell you is it's conflict, Your Honor, and somebody has to resolve the conflict. But it is still a conflict. How can you accept part of her testimony and disregard other parts of her testimony when she's testifying as best as she can? And these things are not inherently inconsistent. When she says there was never any time that I asked for assistance and I didn't get it does not mean there weren't other occasions where there's no one around to ask. It doesn't mean there weren't occasions where I failed to ask. Those occasions all existed according to her testimony. They're not fatally inconsistent. That's fair enough. If there's things in her testimony that conflict with evidence on the other side, you get to try that. What I don't – what I'm having difficulty with is you're saying that because there's conflicts in her own testimony between what she says in one page and what she says in the next page, we're entitled to a trial because we've got a lot of cases saying that a party cannot, by its own inconsistencies, create a genuine issue of material facts. I agree, Your Honor, but I think those cases stand for the proposition that, faced with her deposition, she can't come back with a declaration and say something different. But if she's in a two-day deposition and has asked the same question five times, and one occasion she says one statement and another occasion she says something that is somewhat inconsistent with that, although not totally inconsistent, someone has to resolve that issue. I understand your position. And with that, Your Honor, I'll reserve the rest of my time. Thank you. Good afternoon, Your Honors. Stephen Draftkin for Continental Airlines. Counsel, I have a couple of questions to ask you about sanctions. Okay. I'd be delighted to try to answer them. Because I remember 1927, and I'm checking to make sure I remember it right. It doesn't look like I have it here, but as I remember it, it has the word may, not shall. Is that correct? Correct. It's discretionary. It is discretionary. As is the bad faith doctrine. As I remember, Rule 11 is worded differently, but your appeal is based on failure to impose sanctions under 1927. Is that correct? Our appeal is based both on 1927 and the common law of bad faith doctrine, the inherent powers doctrine. But it's not a Rule 11. It's not a Rule 11 motion. Now, my thought was that the district court, in the exercise of discretion, ordinarily does not impose sanctions and ordinarily does not explain why or why not. And lawyers ask for sanctions a lot, and they get them rarely, only for something extraordinary. Rule 11 was an attempt to tighten up on it, but that's not what's before us. 1927 is may. And here, basically, what the judge got upset about was the plaintiff just kept filing a complaint that made the same claims that the judge had already dismissed. Is that right? Much more to it than that. Isn't that what the judge said was the wrongful conduct? And the fact that we've litigated all the way through a summary judgment motion with allegations where there was no evidentiary support. We demonstrated that there were allegations that continued after the plaintiff testified in her deposition that the allegations were false. Okay, that's a little broader. Right. Now, as I remember, Ninth Circuit law is that if the judge grants a motion to dismiss certain claims, in order to preserve those claims for appeal, they have to be refiled in the amended complaint, even though they've already been dismissed. Is that correct? I recall that line of cases, yes. So if counsel thought that the judge had erred in dismissing certain claims, counsel would nevertheless have to reassert them in an amended complaint in order to preserve a right to appeal the dismissal. That's correct, but that's not has anything to do with what the sanctions motion was about, and it's got nothing to do with Judge Minnelli's comments. Okay, now give me the broader explanation. Okay, if I could, because I think this case, I mean, the appeal I think is insubstantial in this case. I think the cross-appeal could be a very major precedent in this court, and we take it very seriously. Certainly, to come in after a judge grants summary judgment and denies a sanctions motion, it's extraordinary to cross-appeal. And it's not foreclosed, but it's an uphill battle. The standard both ways, whether you grant sanctions or deny sanctions, you're supposed to explain it. And if the court simply said, I grant sanctions because I found Mr. Portner acted recklessly in bad faith. Is there a case where we said the judge has to explain when the judge denies a 1927 sanction? Yes, Your Honor. The court there stated, and this is very important, district courts enjoy much discretion in determining whether and how much sanctions are appropriate. However, discretionary choices are not left to a court's inclination, but to its judgment. And its judgment is to be guided by sound legal principles. In this case, however, the district court failed to provide any explanation, sound or unsound, for its denial of sanctions. And that was a 1927 case and a bad faith case like ours. And the court in that case remanded some of the aspects of the sanctions motion for district court findings and found other aspects were sanctionable as a matter of law and found it in the first instance. And that included the continued maintenance of the suit after it became apparent that the suit should have been discontinued. So that statement is strong. We cited decisions from five other circuits remanding denial of sanctions motions for an explanation. We cited a Third Circuit case from an employment discrimination case that was very similar to ours. And so what I want to explain here is that if Judge Minnell had simply said sanctions denied, I probably wouldn't have crossed appeal. But she spent a long time with us and gave a lot of time to explaining her thinking. And she was very candid. And she expressed in what I interpreted to be a feeling that the Ninth Circuit has an unwritten rule of immunity and that will give lawyers free rides in these kinds of cases. And that struck me. Now I can't find it. Where is that in the excerpt? Okay. Well, it's in the reporter's transcript. And it was she made the statement several times. And I can just ‑‑ I'd like to, just for the benefit of everybody, just read that. Can you give us the site? Yes. The reporter's transcript, page 20, lines 7 and 8, and lines 20 to 25. Page 26, lines 18 to 20. And page 30, lines 12 to 20.  Pardon? Is it in the excerpt of the record? No, it's in the reporter's transcript. Do we have it? I should. Yeah. I know. I read it, but I thought it was somewhere in the excerpt. No, I don't believe so. I thought I read it. Go ahead and read it. What she said, and this is a terrific district judge, the Ninth Circuit is hostile to such words. And I mean hostile. The message we get down here is that the Ninth Circuit is hostile to such motions. And I try to listen very carefully to what they're telling me. Every time I read a Ninth Circuit ruling on what isn't bad faith, I just wonder to myself what possibly could be. It's not a question being reversed. It's being more of a question of trying to understand what it is the Ninth Circuit wants of us. So she's crying for help. She wants the panel of the Ninth Circuit to see. What date is that? April 18th, I believe. Did you quote that in your brief? Yes, extensively. That's probably where I read it. Okay. That must be where we read it. You know, I think what she said was to project the feelings that I'm sure some members of our court do hold. But it's a very broad brush to give it as the view of the circuit. The circuit is always a changing body anyway. I understand. And I think it's a serious problem that she thinks the court won't uphold sanctions. But I handle many cases, Your Honor, and I talk to a lot of lawyers. I'm a solo practitioner, but I'm fairly well-networked. And whether it's employer attorneys like myself or union lawyers who get sued by their members, there is this feeling that most of the district judges in California are afraid to grant sanctions, even when they think it's appropriate under the recognized standards. Counsel, we have cases where we've affirmed sanctions. I'm well aware of that. Let me ask you about this. In her actual written order where she denied sanctions, the order that's entered, April 21, Excerpt 01, has the bait stamp on it. Page 023, she starts her sanctions discussion. She says 1927 requires an express finding that counsel acted willfully, intentionally, or in bad faith under Ninth Circuit case, and inherent power sanctions require bad faith vexatiously, willfully, or for oppressive reasons. And she cites Supreme Court and Ninth Circuit authority. And then she says plaintiff's counsel failed to comply with orders, pursued claims that lacked evidentiary support, filed papers that assisted neither his client nor the court, and ultimately lost on all claims, which is all that you say. But then she says, nevertheless, the court cannot conclude that he has acted recklessly or in bad faith. So it looks like she went through the authorities and said, I have to find recklessly or bad faith, and I can't. Okay. And on the written order itself, you might be right. Okay. Even though her ultimate finding is a one-sentence conclusion of law and not really an explanation for it, and you wouldn't accept it if that one sentence had been sanctions granted because I find bad faith without an explanation. But, again, what I want to come back to is we think that she didn't adequately express herself, and this is generated by other comments she made in the very extensive hearing. And I just want to share some of this with you. I mean, it's in my brief, but it's so telling and so important. I mean, she, at one point towards the end of the hearing at page 39 of the transcript, after engaging Mr. Portner in colloquy and receiving some rather unsatisfactory answers, she said, Mr. Portner, I'm just sort of at a loss. You say you've been doing this for 20 years. I mean, if we have another case like this and it's handled in the same way, I'm going to have to be very hard-pressed not to impose sanctions just out of desperation. I don't get it. Your whole case is built on the transcript and not on the order, but you give us the order in the excerpts and you don't give us the transcript in the excerpts. So I didn't read it because there's only one record. I mean, I thought the reporter's transcript was in the excerpts, but if I'm wrong, I apologize. I would very much like to do that if the Court doesn't have it. It is in the excerpts? I thought it was. They were so voluminous. I have an excerpt of excerpts here. Okay. The supplemental excerpts were not voluminous, but I would like leave to submit it if the Court doesn't have it, you know, within five days. Well, I know I had that sense of reading you, but I think you've convinced me I read it in your brief. Right. I mean, I quote it. So may I have leave to submit it? We'll issue an order if we decide we want to. All right. So but she says, you know, I don't have any way to discourage this kind of litigating a case. Okay. This is like saying, well, you get a free ride in my courtroom and it's only if you do it a second time, she says. A judge can say a lot of things. I mean, I can I can say, gee, I'd really like to do this, but the Supreme Court always slaps me down and so on. But in the end, it's my ruling and it's going to have to be judged. And what's in it? Right. And what our point is, I don't ask you to reverse her and say she should have awarded sanctions. I say that since her written finding was a one sentence conclusion of law without an explanation as to how she reached her conclusion, bolstered by all the comments she made on the record, that the appropriate remedy is to remand in accordance with the Trulis v. Barton case and to send it back to her, but at the same time to affirm that if she finds that sanctions are appropriate, her perception that there is a rule of immunity in the Ninth Circuit is wrong. And in the sound exercise of discretion, she exercises and opposes sanctions should be affirmed. OK, because she's asking for it. She said it in so many ways in this at this hearing. And she's made comments like big companies should just assume this is a cost of doing business. Doesn't matter if you're a large airline losing money after the terrorist attacks. She says, gee, we don't know from the get go if it's the client's fault or the lawyer's fault. But we know from the case law that it doesn't matter. OK, we can't pierce the attorney client privilege. That doesn't create an immunity. So she's given a whole bunch of reasons we know are erroneous thoughts. She's frustrated. She feels mostly that if she writes an order, she's going to get reversed. And I mean, I note here, particularly Judge Kleinfeld, I pointed out to Judge Menele, she had written for the Ninth Circuit, the Pacific Harbor capital case, which she dissented. And I read your dissent very carefully in preparing for today. And I noted you made a comment in your dissent, which appears at 210 F. I mean, you disagreed with the majority's application of the sanctions standard to the facts of that case. But your comment was a trial judge needs the power and discretion to use sanctions to punish and deter frivolous arguments that take up considerable time for the court and cause significant expense to adversaries. That's our case. Judge Menele said on the record, This case has taken up, obviously, hours and hours of Mr. Draftkin's and his firm's time, hours and hours of the court's time for no particular purpose. But that will be a total of five motions, blah, blah, blah. She said it over and over again. She's begging for assurance that she does have, indeed, this authority. And we think there's some authority under the Trulis case to remand, because her written order is not the appropriate explanation of the denial. It's just simply a one-sided statement. So we would ask you to do that. We ask you to take this very seriously, because it's a big endemic problem, certainly in California district courts that I'm familiar with. And as I said, we've had situations, because you've seen a part of the case on the appeal that isn't really the case that was handled in the district court. The case in the district court was a wrongful discharge case, primarily, based on termination on account of age, race, national origin, sex, disability, retaliation for complaining about sexual harassment. Almost none of that's in the appeal. Instead, the primary issue you heard about was a fairly piddly argument about a failure to reasonably accommodate disability. This has nothing to do with the termination. It was not even opposed in the summary judgment opposition. It wasn't even mentioned. Judge Minella picked up on that. She said, number one, I have serious doubts whether an appropriate request for reasonable accommodation was made, but I won't get to that, because there was clearly no denial of any request for lifting assistance. Counsel does not even point to Judge Minella's reasoning, what she pointed to in the evidence, but she pointed to the language that you read, Judge Kleinfeld, and then she took this other evidence that was in the deposition, which was extremely vague. And I will read it to you, because Mr. Portner has not really given it to you with a full deck. And this is at page 375 of her deposition transcript. And going over to about page 379, and this was cited by Judge Minella as evidence that she didn't think met the standard of the Anderson case. And what this says at 379 of the deposition, I asked, did you make requests of management for help almost every time a claim came in? Well, maybe three or four times a month. And who did you ask? Well, we'd get on the radio, and whoever was on duty at the time. And people wouldn't come to help? No. What would they say? No, they didn't even respond. So do you know if people even heard you on the radio? I have no idea. So she works at night. There's low staffing at night. She says, I made a request on the radio. No one responded. But she doesn't even know if anyone heard her. That's hardly a denial of a request. And that's what Judge Minella said in rejecting that as being evidence to constitute a triable issue of fact. So that's the only point that Mr. Portner has raised in this. It's insubstantial. It's got nothing to do with the termination. We also pointed out that it's not an appropriate reasonable accommodation to ask for somebody else to do your lifting for you in any event. But Judge Minella's findings on the summary judgment motion are unassailable. They were not brought to your attention. They weren't properly raised in appeal. I don't think any of the points that were presented to you on appeal were appropriately raised based on the various statements provided. And most importantly, the issues that we're seeking sanctions for, and large sanctions, okay, this is why we're not asking for sanctions on appeal, because the amount of time we spent preparing the appellate papers are minimal compared to what we spent in the last half of this case dealing with everything we did. So I'm sparing you not asking for repetitive motions. Let me see if I've got this right. When this was litigated below, most of it was about sex discrimination and sex harassment and national origin discrimination and race discrimination and age discrimination and all these other things. And retaliation. And retaliation. Right. And everything that's addressed in the summary judgment motion. We get a lot of cases. I may be mixing them up. Is this the one where she complained about somebody sexually harassing her and they fired him? Yes. Right. And if I can just make one point, because I see I'm down to about 30 seconds. This retaliation claim, which was her hallmark claim, first she said she complained that two of the current managers had sexually harassed her and that she was terminating opposition for that. She admitted in her deposition that she never complained about them and they never sexually harassed her. That's Mr. Brainy and Mr. Wedding. Mr. Newcomb, who had been the general manager in 1996. Hold on. I was really trying to ask you about something else. Right. I was leading up to a sanctions question. So what you're saying you need sanctions for is making you spend so much of Continental's money litigating about sex and race and national origin and age and retaliation and all this when the only thing she's even arguing about now is disability. And on that she says there's never an instance where she says she needs help. Somebody hears her when she says she needs help and they don't give it to her. Yes. The issues that give rise to the sanctions relate to claims that Judge Minnella dismissed on summary judgment, which you have not seen because they were abandoned and not pursued on the appeal. Okay. And that includes a retaliation claim based on false allegations. It involves a retaliation claim where a manager made sexual advances on the plaintiff four years before her termination, was promptly and immediately terminated. There wasn't an iota of evidence to say because she complained four years earlier there was a linkage. There was a claim that because he, when he worked in another company, came in and met with the general manager for a business meeting, that that was sexual harassment for him to go to a private office on a day she wasn't even there. That's the kind of ridiculous stuff that Judge Minnella was so frustrated with, which she spent her time on the summary judgment motion. It's not the issues that are nonsensically raised on this appeal. It's those issues. And we think this is potentially a big case. You can provide a valuable service to give the kind of clarifications Judge Minnella, I think, was crying out for. And certainly my colleagues in the employment and labor law bar would certainly call out for that clarification. Because no matter what the recent cases in the Ninth Circuit say, that when you get to an employment case, there's this belief that there's an unwritten rule of immunity in the Ninth Circuit. And what she said is what many judges say. And, you know, this was the best case I've ever seen to take up on the cross appeal. And that's why we ask you so seriously to take this seriously. Thank you, Counsel. I may respond, Your Honors. First, all of the other issues were not the primary issues on the summary judgment motion. Her order sets forth exactly what she was dealing with. And that is exactly what she did. And what counsel is asking for is- Wait a minute. I didn't understand that. The way it looked to me was she got fired for refusing to take a drug test. And then she sued the pants off him on everything. Threw him in a kitchen sink. Everything. And what Judge Minnella was concerned about and what your adversary is concerned about is they spend a fortune on depositions and developing evidence and motion practice and all this on sexual harassment and age discrimination. And there's nothing there. And the problem is you run up litigation expenses high enough, the nuisance value of a meritless case becomes very substantial. So all you have to do is bring a meritless case and you can get $5,000, $10,000, $25,000.  I understand that, Your Honor, and that is not what happened here. First of all, I did not file the original complaint. That's in the record. It was filed by another attorney I took over. Objections would be against the party rather than- I understand that, Your Honor. But that's not what's being sought on this appeal. It's objections against me that he's dealing with. The second thing is, is that I did not choose to appeal those other issues, the age and the sex discrimination, because I thought, looking back on it, that it was, you know, a close call. And I didn't want to deal with something that I thought was a close call on appeal. I like to keep appeals to minimal issues that I think I can support. And that's exactly what I did here. And as to the age discrimination, stating a prima facie case for age discrimination or sex discrimination is very simple, which is what was alleged here, which is that she's in protected class, she's performing her duties, and she gets terminated. That is the prima facie. No, no, that's not right. You don't have a prima facie case for sex discrimination on behalf of any female who gets terminated at any job, no matter what the circumstances. No, there has to be something that would indicate that that was the motivation. I agree. And we had at least statements from witnesses here that these supervisors were primarily yelling at and taking a discriminatory action against women. That's in some of these independent witnesses' testimony, Mr. Devantier, Lawrence Corio, Janet Corio, those other witnesses. There is some minimal evidence of that. And, again, I didn't file this. Is there anything to stop the district court, if we were to reverse on sanctions, from imposing sanctions on whatever lawyer the district court determines did, in fact, multiply the proceedings unreasonably and vexatiously? So if it's not you, but it's somebody else, the district court could impose sanctions there? Only because he wasn't given notice of it, or she, in this case, wasn't given notice of it in the first place. But I also wanted to— She could be given notice and an opportunity to be heard. I suppose, Your Honor. But I also wanted to address another question, which is this call for an explanation. The district court was charged with trying to find if there was recklessness or bad faith. That means she's essentially trying to find what was in my mind, is what she's trying to find. Was I being reckless? Was I acting in bad faith? And looking at the evidence, she's required to make a finding of fact. Was there recklessness or bad faith? Looking at all this evidence, the only explanation, when you say it isn't there, is to say, I don't find evidence that Mr. Portner's mind was either reckless or in bad faith. What other explanation than what she has in that order could you give? Nobody has addressed that here. What explanation is there for lack of recklessness or lack of bad faith, other than the statement by the court, I looked at all this evidence and I don't find it. I don't see what other explanation she could give. And unless there is another explanation, I think she's complying with the statute. She went through great lengths, is what she did. And, yes, she thought that what I did was not complying with her orders. But she didn't think it was reckless or in bad faith. And as Your Honors pointed out, I was simply trying to assert my client's position as the best I knew how. And I had a disagreement with the judge, and I still do, as to what allegations support either harassment or retaliation or discrimination. And that was what it was. But it wasn't anything that she found that was reckless or in bad faith, and she said that. She looked at all the facts and she came to that conclusion. And other than that, how could she determine or give an explanation as to what she thought was in my mind or not? Did she comment at all? As I understand your previous remarks, it was really some other attorney who was responsible for filing all the unsupported and unsupported allegations. In the first place, yes. Did she give any explanation of why no sanctions against that attorney? No, she did not, Your Honor. But I'll also admit that I took the case over and I proceeded with it as it was filed. And, yes, I admitted the complaint several times, and I eliminated the original complaint. It had to be 60, 76 pages, and I compared it down to 15 or 20. But I pursued those claims as long as I could pursue them because I thought there was evidence there. But I was not the one who first filed them. And I'll admit to that I pursued. Was it a 70-page complaint? Oh, actually, I think it was larger than that. It's in the excerpts. It's the very first document. I'll take that under Rule 8, the concise rule. I agree, Your Honor. Simple employment case. But that was how it came to me. And that's the very first document in the excerpts. Thank you, Your Honor. Thank you. May I have 30 seconds for a Bible? No. Not unless my colleagues wish to hear further. Very quickly. Thank you, counsel. Thank you, Your Honor. And Arroyo v. Continental is submitted.
judges: Canby, Noonan, Kleinfeld